1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| BOYD E. WHITE, | Case No.  C09-5188RJB |
| Plaintiff, | |
| v. | ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT |
| BNSF RAILWAY COMPANY, a Delaware corporation, | |
| Defendant. | |

This matter comes before the Court on Defendant BNSF Railway Company's Motion for Partial Summary Judgment to Dismiss Plaintiff's Federal Safety Appliance Act Claim (Dkt. 35) and Plaintiff's Motion for Partial Summary Judgment (Dkt. 33).  The Court has considered the pleadings filed in support of and in opposition to the motions and the file herein.

## I.      FACTS

Plaintiff brings this action under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 *et seq.*, as a result of injuries he alleges he sustained in August of 2006 while working for Defendant.  Dkt. 1.  As part of his claims, Plaintiff alleges that Defendant violated provisions of the Federal Safety Appliance Act (FSAA), 49 U.S.C. § 20310, *et seq.*, and the Code of Federal Regulations, including 49 C.F.R. § 213.135.  *Id.*

In deciding this case, a little background in the way trains are put together is helpful.

## A.    RAILCARS AND COUPLING DEVICES

Railroad cars in a train are connected by couplers located at both ends of each car. *Norfolk and Western Ry. Co. v. Hiles*, 516 U.S. 400, 401 (1996)(*internal citations omitted*).  "A coupler consists of a knuckle joined to the end of a drawbar, which itself is fastened to a housing mechanism on the car."  *Id.*  "A knuckle is a clamp that interlocks with its mate."  *Id.*  "When cars come together, the open knuckle on one car engages a closed knuckle on the other car, automatically coupling the cars."  *Id.*

## A.    AUGUST 2006 EVENTS

On August 17, 2006, Plaintiff was working for Defendant in the rail yard in Tacoma, Washington as a switchman.  Dkt. 42-2, at 8.  He had a "string of cars" that he and the yard crew were putting out on different tracks.  *Id.*  The cars were either being used to build a train or added to trains stopping in Tacoma to add or drop cars.  *Id.*, at 8-9.  Plaintiff testified that he was walking next to a moving string of rail cars preparing to separate/uncouple them.  Dkt. 40-2, at 3. He states that he pulled "the pin" ("a thin metal rod that allows you to lift the pin in the coupler without having to get between the cars") on car MRL 21039 to open the knuckle and uncouple the car.  Dkt. 40-2, at 3.  According to Plaintiff, when he tried to lift the pin, it jammed and he felt a sharp pain in his lower back.  Dkt. 40-5, at 2.  Plaintiff radioed the engineer and asked him to stop the engine.  Dkt. 40-2, at 3.  Plaintiff went in between the cars and had to open the knuckle by hand.  Dkt. 40-2, at 6.  Plaintiff reported the incident to the yardmaster.  Dkt. 40-2, at 8.  Plaintiff testifies that his back was further injured on August 22, 2006, when he used a "pocket switch."  Dkt. 42-2, at 6.

Defendant had three of its train car repairman inspect the two cars involved in the August 17, 2006, incident.  Dkt. 40-3, at 3.  Mr. Douglas Lyons, one of the repairman, testified that after the August 17, 2006, incident, they opened and closed the knuckles on both cars (MRL 21039 and the other car involved), and they worked without a problem.  Dkt. 42-3, at 2.  Mr. Lyons testified that some of the reasons that a pin lifter would not work properly is if some of the internal components of the knuckle are "worn, loose, or broken."  Dkt. 40-4, at 5.  He testified that they did not examine the internal components.  Dkt 40-4, at 7.  He also testified that when

1  they examined the train cars, they were not moving, (Dkt. 40-4, at 7) unlike when the incident

2  occurred.

3      **B.    PENDING MOTIONS**

4      Defendant now moves for summary dismissal of Plaintiff's FSAA based claim arguing

5  that Plaintiff can not meet the "in use" requirement and so the FSAA does not apply.  Dkt. 35.

6  Defendant states that the motion seeks dismissal of the FSAA based claim only and not

7  Plaintiff's FELA claim.  *Id.*  In support of the motion, Defendant argues that Plaintiff was part of

8  the yard crew at the time of his alleged injury, the rail car was involved in switching operations,

9  and was no where near imminent departure and so was not "in use" as required by the FSAA.

10 Dkts. 35 and 45.  Plaintiff responds, arguing that the car was "in use" for purposes of the

11 relevant FSAA provision. Dkt. 39.  He argues that it was not "undergoing inspection, repair, or

12 servicing" at the time of the injury, and so FSAA applies.  *Id.*

13     Plaintiff moves for summary judgment, requesting that the Court find as a matter of law,

14 that Defendant is liable under the FELA for violating the FSAA.  Dkts. 33 and 44.  Plaintiff

15 further moves for a ruling that Defendant's violation "caused - in whole or in part- his injury,

16 and that Defendants' FSAA violation precludes it from asserting the defense of contributory

17 negligence."  *Id.*  Plaintiff argues that the car in question was "in use" for the purposes of the

18 FSAA, a violation of the FSAA results in strict liability under the FELA, and Defendant violated

19 the FSAA when it equiped the car with a pin lifter that failed to function, requiring Plaintiff to go

20 between the cars and open the knuckle manually.  *Id.*  Plaintiff argues that Defendant's violation

21 of the FSAA caused, in whole or in part, Plaintiff's injury, and Defendant can not use

22 contributory negligence as an affirmative defense.  *Id.*  Defendant responds, arguing that the cars

23 were not "in use," under FSAA, there are issues of fact as to whether the coupler operated

24 properly, and there are issues of fact as to whether there is a causal connection between the

25 alleged pin lifter incident and Plaintiff's claimed back injury.  Dkt. 41.

26

27

28

## II.   DISCUSSION

### A.   SUMMARY JUDGMENT - STANDARD

Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."); *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*. Conclusory, non specific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**B.     FSAA**

Congress did not provide a private cause of action in the FSAA.  *Crane v. Cedar Rapids & I. C. Ry. Co.*, 395 U.S. 164 (1969).  FELA, however, makes railroads liable to employees based on violations of the FSAA.  *Id.*; *Norfolk and Western Ry. Co. v. Hiles*, 516 U.S. 400, 408 n.1 (1996).  "In such actions, the injured employee is required to prove only the statutory violation and thus is relieved of the burden of proving negligence."  *Crane*, at 166 (*internal citations omitted*).

The FSAA "requires rail cars to be equipped with enumerated safety features, such as certain types of couplers, brakes, running boards, and handholds."  *Union Pacific R. Co. v. California Public Utilities Com'n*, 346 F.3d 851 (9th Cir. 2003) (*citing* 49 U.S.C. § 20302).  Relevant to this case, the FSAA provides that "a railroad carrier may use or allow to be used on any of its railroad lines . . .a vehicle only if it is equipped with . . . couplers coupling automatically by impact, and capable of being uncoupled, without the necessity of individuals going between the ends of the vehicles."  49 U.S.C. § 20302 (a)(1)(A).

1.     *Application of the FSAA - "In-Use" Requirement*

Parties argue that the central question as to whether there was a FSAA violation is whether the car was "in use" when Plaintiff alleges that his injuries occurred.  Dkts. 33, 35, 39 and 41.  Parties cite the statutory language, "a railroad carrier 'may use' or allow to be used . . . a vehicle only if . . .'" and *Brady v. Terminal R. Ass'n of St. Louis*, 303 U.S. 10, 13 (1938)(a train must be "in use" for the FSAA to apply).  *Id.*  Neither of the parties cite to Ninth Circuit authority defining when a rail car is "in use" for the purposes of a FSAA claim based on the coupling device provision, or any other provision, for that matter.  Moreover, the law is not well settled among the other circuits.

In addressing cases regarding FSAA's coupling provision, the Supreme Court has implicitly held that the coupling provision applied during switching operations.  This includes cases of workers injured between cars during coupling, *Johnson v. Southern Pacific Co.*, 196 U.S. 1(1904) (hand crushed between cars during coupling) and injuries caused by the failure of the coupling devices, *O'Donnell v. Elgin, J. & E. Ry. Co.*, 338 U.S. 384 (1949).  In *O'Donnell*,

1    the Court addressed the question of whether the FSAA's provision on coupling devices included

2    situations where "after a secure coupling is effected, [the cars] will remain coupled until set free

3    by some purposeful act of control." *Id.* The Court concluded that despite the fact that the statute

4    did not provide so explicitly, the provision did include such a circumstance. *Id.* The *O'Donnell*

5    plaintiff was the wife of a deceased switchman, who was found dead on the rail line of the

6    defendant's rail yard. *Id.*

7            When last seen, he was going to adjust the couplers on certain cars which
             previously had failed to couple by impact.  Shortly after his departure, as the
8            result of the breaking of a coupler, two cars broke loose from a cut of cars that
             was being moved in a switching operation. Running free, they collided with other
9            standing cars and drove them against those whose couplers decedent had said he
             was going to adjust.

10   *Id.* Although the Court did not expressly address the issue of whether the rail car was "in use"

11   during a switching operation, or run away car situation, it applied and even expanded the

12   coverage of the FSAA's coupling device provision. *Id.*

13           As was the case in the various Supreme Court cases which applied the coupling provision

14   of the FSAA, FSAA's coupling provision applies to the case here.  That is, the train cars, using

15   the statutory language - "vehicles" were "in use" at the time Plaintiff alleges he was injured.

16   Like the deceased in *O'Donnell*, Plaintiff was working as a switchman on the ground in a rail

17   yard.  Dkt. 42-2, at 8.  He was engaged "switching operations"- uncoupling rail cars, which are

18   "vehicles" under the FSAA, 49 U.S.C. § 20301(a) (defining "vehicle" as "a car, locomotive,

19   tender, or similar vehicle"), when the incident occurred.  Dkt. 40-2, at 3.  The railcars were not

20   undergoing inspections, repairs or servicing.  *See Angell v. Chesapeake and Ohio Railway*

21   *Company,* 618 F.2d 260, 262 (4th Cir. 1980); *Steer v. Burlington Northern, Inc.,* 720 F.2d 975,

22   976-77 (8th Cir. 1983).  The Plaintiff has met the "in use" requirement under the FSAA.

23           Defendant cites *U.S. v. Seaboard Air Line R. Co.*, 361 U.S. 78 (1959), for the proposition

24   that the FSAA does not apply to switching operations.  Dkt. 35.  In *U.S. v. Seaboard Air Line R.*

25   *Co.*, the United States sought monetary penalties from a railroad based on the railroad's failure

26   to have requisite number of power brakes required by the FSAA on trains going short distances.

27   The Court noted that the "[FSAA] should be liberally construed as a safety measure." *Id.* at 83.

28   In holding that FSAA's power brake provisions applied to the trains at issue, the Court stated,

ORDER - 6

1 "[a] moving locomotive with cars attached is without the provision of the act only when it is not

2 a train; as where the operation is that of switching, classifying and assembling cars within

3 railroad yards for the purpose of making up trains." *Id.*

4         Defendant also points to the Fifth Circuit Court's holding in *Trinidad v. Southern Pacific*

5 *Transportation Co.*, 949 F.2d 187 (5th Cir. 1991) and the Fourth Circuit's holding in *Deans v.*

6 *CSX Transportation, Inc.,* 152 326 (4th Cir. 1998).  Dkt. 35.  In *Trinidad*, the Fifth Circuit

7 established a bright line rule, which was that a train is not "in use" (and thus subject to the

8 FSAA) until the train has completed switching operations - is fully assembled - and the crew has

9 completed their predeparture inspection.  *Id.*  The Fourth Circuit rejected the this bright line test,

10 and instead adopted a "totality of the circumstances" approach in *Deans v. CSX Transportation,*

11 *Inc.,* 152 F3d. 326 (4th Cir. 1998).  The *Deans* Court found that relevant factors should be

12 considered including "where the train was located a the time of the accident and the activity of

13 the injured party."  *Id.* at 329.

14         *Seaboard*, *Trinidad*, and *Deans* are problematic in their application here.  In each of these

15 cases, courts were concerned with the application of the braking provisions of FSAA to trains,

16 and did not address the provision regarding "vehicles" and coupling devices.  FSAA makes

17 distinctions between its requirements for "locomotives," "trains," and "vehicles" for brakes and

18 other safety devices.  49 U.S.C. § 20302 (a).  For example, the FSAA requires that a railroad

19 carrier use only  "locomotive[s]" with "power-driving wheel brake[s] and appliances for

20 operating the train-brake system." 49 U.S.C. § 20302 (a)(4).  A railroad carrier may only use

21 "trains" if "enough of the vehicles in the train are equipped with power or train brakes . . . ." 49

22 U.S.C. § 20302 (a)(5).  Railroad carriers can use only "vehicles" that have certain couplers (the

23 statute's precise language is above), steps, hand brakes, ladders, running boards, and grab irons.

24 49 U.S.C. § 20302 (a)(1)-(2).  In contrast to *Seaboard* and the other circuit cases cited by

25 Defendant, this case involves the application of the provision on coupling devices, which applies

26 to "vehicles," that is "a car" or "locomotive," and not to "trains"  - a string of "vehicles."

27 Moreover, Defendant does not meaningfully dispute that it is during switching operations that

28 the individual cars are coupled and uncoupled.  If, as Defendant appears to advocate, the FSAA's

ORDER - 7

coupling provisions do not apply during switching operations, the coupling provision is rendered

meaningless.  This Court will not so conclude.

Defendant's motion to summarily dismiss Plaintiff's FSAA based claim because Plaintiff

can not meet the "in use" requirement (Dkt. 35) should be denied.  Plaintiff's motion for an order

that the FSAA applies (Dkt. 33) should be granted.  After concluding that FSAA applies, the

next issue to be decided is whether FSAA was violated.

2.     *Violation*

Liability in each of the cases regarding the coupling provision "was predicated on the

failure of coupling equipment to perform as required by the [FSAA]."  *Norfolk and Western Ry.*

*Co. v. Hiles*, 516 U.S. 400, 408 (1996).   The FSAA "creates an absolute duty requiring not only

that automatic couplers be present, but also that they actually perform."  *Id.,* at 409 *(internal*

*citations omitted*).  "A failure of equipment to perform as required by the [FSAA] is in itself an

actionable wrong, in no way dependent upon negligence and for the proximate results of which

there is liability-a liability that cannot be escaped by proof of care or diligence."  *O'Donnell v.*

*Elgin, J. & E. Ry. Co.*, 338 U.S. 384, (1949).  "However, failure to couple will not cause a

violation if the railroad can show that a coupler has not been properly set to couple on impact."

*Norfolk,* at (*citing Affolder v. New York, C. & St. L.R. Co.,* 339 U.S. 96, 98 (1950)).

Defendant has pointed to sufficient evidence to show that there are issues of fact as to

whether the coupling devices failed to perform during the incident.  Mr. Lyons' testified that

after the August 17, 2006, incident the knuckles on both cars worked without a problem.  Dkt.

42-3, at 2.  A fact finder could infer from this evidence that the knuckles were functioning

properly at the time of Plaintiff's incident.  Plaintiff's arguments regarding the fact that the

examination was conducted after the event, and that the conditions were different (the cars were

not moving, for example) go to the credibility of Defendant's witness.  Plaintiff's motion for

summary judgment on this issue should be denied.

3.     *Proximate Cause*

Plaintiffs asserting FELA claims based on violations of FSAA are "not required to prove

common-law proximate causation but only that [the] injury resulted 'in whole or in part' from

1  the railroad's violation of the Act, and the railroad is deprived of the defenses of contributory

2  negligence and assumption of risk." *Crane,* at 166 (*internal citations omitted*).

3       Plaintiff's motion regarding proximate cause should be denied.  Because there are issues

4  of fact regarding whether Defendant violated the FSAA, there are issues of fact as to whether the

5  Defendant's violation of the Act was the proximate cause of Plaintiff's injuries.

6                    4.    *Affirmative Defenses*

7       To the extent that Plaintiff also seeks to preclude Defendant's use of certain affirmative

8  defenses, which are disallowed under FELA for claims based upon FSAA violations, Plaintiff's

9  motion should be denied.  If it is determined that an FSAA violation caused injury to the

10  Plaintiff, those affirmative defenses will not be allowed.  On the other hand, if it is not so

11  determined, the affirmative defenses may be applied to Plaintiff's other theories.

12                          **III.   ORDER**

13       Therefore, it is hereby, **ORDERED** that:

14  •    Defendant BNSF Railway Company's Motion for Partial Summary Judgment to Dismiss

15       Plaintiff's Federal Safety Appliance Act Claim (Dkt. 35) is **DENIED**;

16  •    Plaintiff's Motion for Partial Summary Judgment (Dkt. 33) is **GRANTED**, as to the

17       application of the Federal Safety Appliance Act, and **DENIED** in all other respects;

18       The Clerk of the Court is directed to send uncertified copies of this Order to all counsel

19  of record and to any party appearing *pro se* at said party's last known address.

20       DATED this 23rd day of March 2010.

21

22

23       Robert J Bryan
         United States District Judge

24

25

26

27

28

ORDER - 9